FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 SEP 25  AM 10: 33
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| FREDERICK W. JONES, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | CASE NO. CV 96-B-2252-S |
| } | |
| DOANE PRODUCTS COMPANY, } | |
| } | |
| Defendant. } | |
| } | |
| } | |

ENTERED
SEP 2 5 1998

### MEMORANDUM OPINION

Currently before the court is the motion of defendant Doane Products Company ("defendant") for summary judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

This lawsuit arises out of the suspension and termination of the plaintiff, Fred Jones ("plaintiff"), by the defendant. In his complaint, plaintiff alleges (1) that he was suspended and later discharged by defendant because of his purported disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12213, and (2) that his discharge by the defendant constituted a breach of the union contract, in violation of § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[1]  Plaintiff seeks reinstatement, back-

---

[1] Subsequent to the filing of plaintiff's complaint and upon joint stipulation of the parties, the court entered an order dismissing with prejudice plaintiff's claims against the union. Consequently, plaintiff's LMRA claim against defendant no longer stands. (*See infra* p. 4.) Therefore, this Memorandum Opinion will not address any of plaintiff's LMRA claims. Furthermore, the court will not address any Family Medical Leave Act claims contained in

33

pay, compensatory damages, punitive damages, benefits, costs and attorney's fees.

## FACTUAL SUMMARY

In September of 1993, defendant, a manufacturer of pet food, hired plaintiff to work in its Birmingham plant. At the time of his employment Jones had been diagnosed with paranoid schizophrenia. (Def.'s Ex. 6 at 45.)[2] Defendant was aware when they hired plaintiff that he had been diagnosed with paranoid schizophrenia. (Def.'s Ex. 6 at 76.)

Plaintiff claims that, while employed with defendant, he told his co-workers that he had a "nervous problem," referring to his paranoid schizophrenia, and that he was taking medication for it. (Def.'s Ex. 6 at 55.) Plaintiff also told his co-workers that he received a monthly disability check from the Social Security Administration as a result of his medical condition. (*Id.*)

Plaintiff alleges that employees at work referred to him by derogatory names based on his mental condition. (*See* Pl.'s Ex. 1.) Plaintiff contends that some of his co-workers called him "Crazy Fred." (Def.'s Ex. 6 at 56.) Plaintiff also contends that on one occasion, two or three years before he filed this action, his supervisor told him to "get his crazy self over here and clean up these bags." (*Id.*) Plaintiff further states that one of his supervisors, Jamie Gramann, told him: "Fred, the next time I make you mad, hit me right here, so I can sue Doane for hiring a crazy

---

plaintiff's proposed amended complaint, as plaintiff's Motion for Leave to Amend Complaint has not been granted, and the parties' briefs fail to address any such claims.

[2] Defendant has submitted evidence in support of its Motion for Summary Judgment, which is organized as Exhibits 1-18. Defendant has also submitted evidence in support of its reply brief, which is organized as Exhibits 1-9. Plaintiff has submitted evidence in support of his opposition to defendant's Motion for Summary Judgment, which is organized as Exhibits 1-15. For purposes of this Memorandum Opinion, the court will refer to these evidentiary submissions as "Def.'s Ex.," "Def.'s Ex. in Supp. of Reply," and "Pl.'s Ex.," respectively, followed by the applicable page number and/or paragraph number.

McDonald's mother fucker like you." (Def.'s Ex. 6 at 57.) In November of 1994, plaintiff filed a charge of discrimination against defendant, but later voluntarily dismissed the charge.

In March of 1996, plaintiff was suspended for three days for absenteeism. (*See* Def.'s Ex. 15.) Plaintiff had previously received a verbal warning for absenteeism in October 1995, and a written warning for absenteeism in December 1995, and does not dispute that such warnings were properly assessed. (Def.'s Ex. 6 at 105-06.) Plaintiff has testified that he knew that his next unexcused absence following his December 1995 written warning would result in a three day suspension. (Def.'s Ex. 6 at 108.) Thereafter, plaintiff incurred an unexcused absence in March 1996 which resulted in a three day suspension.

On April 13, 1996, plaintiff contends that he hurt his back changing a tire on the way to work at defendant's plant. (Def.'s Ex. 6 at 11.) Later that day, plaintiff arrived at defendant's plant expecting to work on the plant's slip line, but learned that the slip line was shut down that night. (Def.'s Ex. 2 at 118.) Plaintiff was then instructed to work on Line 3, a different production line. (Def.'s Ex. 2 at 118, 121.) Plaintiff began to work Line 3, but soon complained that he was "dizzy" and "about to pass out." (Def.'s Ex. 2 at 133.) Plaintiff claims that he then clocked out and went to look for his supervisor in his office, but could not find him. (Def.'s Ex. 2 at 128.) Plaintiff states that he left the plant without notifying the plant supervisor that he was leaving. (Def.'s Ex. 2 at 10.)

Plaintiff contends that, on the day he left the plant, he told the union leadman that he was "dizzy." (Def.'s Ex. 2 at 130.) The leadman states that he did not hear plaintiff make any such remark. (Def.'s Ex. 7 at 11-12.) However, plaintiff admits that he did not tell his supervisor that he was sick or that his back was hurting before the start of his shift. (Def.'s Ex. 2 at 148.)

3

Additionally, he did not tell the employee working alongside him on the production line that he was sick, felt dizzy, or had to leave. (Def.'s Ex. 2 at 130-31.) Plaintiff did not dial 911 or ask anyone to call him a taxi cab or an ambulance to take him to the hospital when he felt like he was going to "pass out" at the plant. (Def.'s Ex. 2 at 133.)

Plaintiff has testified that, when he left the plant, he got into his car, drove twenty minutes to the hospital, saw a posted sign indicating that he needed his insurance card, drove forty minutes to his home, picked up his wallet, and drove another forty minutes back to the hospital. (Def.'s Ex. 2 at 135.) Plaintiff was treated at the hospital for back strain, was given Motrin, an aspirin substitute, and was released. (Def.'s Ex. 10.) Plaintiff was subsequently discharged for leaving the plant without his supervisor's permission. (Def.'s Ex. 5.)

Plaintiff filed a grievance with the union and his discharge was arbitrated before Arbitrator Patricia Thomas Bittel. In May 1997, Arbitrator Bittel denied plaintiff's grievance, finding that defendant had just cause to discharge plaintiff. (Def.'s Ex. 8 at 10.) Plaintiff is no longer contending that the union breached its duty of fair representation, and has dismissed his claim against the union. Consequently, plaintiff no longer claims that his discharge by defendant constituted a breach of the union contract, in violation of § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a). *See Del Costello v. International B'hood of Teamsters*, 462 U.S. 151 (1983) ("The two claims are inextricably interdependent. To prevail against either the Company or the union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the union.") However, plaintiff alleges that defendant discriminated against him on the basis of his mental disability in violation of the Americans with Disabilities Act.

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED.R.CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts

5

are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

### I. Circumstantial Evidence of Discrimination

In order to prove a violation of the ADA using circumstantial evidence, an employment discrimination plaintiff must first establish a prima facie case. To establish his prima facie case, plaintiff must prove that (1) he has a disability, (2) he is a qualified individual, and (3) he was subjected to unlawful discrimination because of his disability. *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996).

Defendant, in moving for summary judgment, does not contend that plaintiff failed to establish the first two elements of the *Morisky* three-part prima facie test for ADA discrimination. (*See* Def.'s Reply Br. in Supp. of Mot. for Summ. J. at 3 n.2.) Accordingly, without deciding the issue, the court will give assume, for purposes of this motion, that plaintiff has established the first two elements of his prima facie case. However, because plaintiff cannot establish the third element of his prima facie case, defendant's motion for summary judgment is due to be granted.

Plaintiff's evidence fails to establish that plaintiff was subjected to unlawful discrimination *because of* his disability. The Eleventh Circuit has previously explained the meaning of the "because of" requirement contained in the third element of the prima facie case, stating "[w]e think Congress knew what it was doing, and we hold that the ADA imposes liability whenever the prohibited motivation makes the difference in the employer's decision, i.e., when it is a *"but-for"*

6

cause." *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1076 (11th Cir. 1996)(emphasis added). The court further explained that "[i]n everyday usage, 'because of' conveys the idea of a factor that made a difference in the outcome. The ADA imposes a 'but-for' liability standard." *Id.* at 1077. Thus, for plaintiff to satisfy the third element of his prima facie case, he must be able to show that he was terminated because of, or but for, his disability.

Plaintiff is unable to make this showing. As noted, plaintiff was suspended for absenteeism in March, 1996 pursuant to the attendance rules spelled out in defendant's contract with the union. (Def.'s Ex. 16 at 10-11.) Plaintiff was properly assessed both a verbal warning and a written warning for attendance, and he knew that his next unexcused absence would result in a three day suspension. When plaintiff had a subsequent unexcused absence, he was suspended for three days. This suspension was because of absenteeism, pursuant to the union contract. There is no evidence to suggest and plaintiff does not argue that he was suspended because of his paranoid schizophrenia.

Similarly, the evidence shows that plaintiff was discharged because he failed to notify his supervisor prior to leaving the plant early, not because of his paranoid schizophrenia. Employees are required to notify their supervisor if they leave the plant during their shift. (*See* Def.'s Ex. 3 in Supp. of Def.'s Reply Br. at 78-79.) Plaintiff submitted no evidence that any other employee who walked off the job and left the plant without notifying his supervisor was not discharged for such conduct.[3] Furthermore, plaintiff's assertion that his sudden departure from the plant was

---

[3] In his Brief in Opposition, plaintiff states that "[t]he personnel file of [plaintiff's] own supervisor, contains a written documentation of an incident where he himself left the plant without explanation." (Pl.'s Br. in Opp'n at 6.) Plaintiff's next sentence, however, admits that: "Gramann alerted the plant superintendent that he was leaving the plant." *Id.* This incident and the others

merely an absence that should have resulted in a suspension is not well taken. Plaintiff was not absent from work. He reported to work and then walked off the job, leaving the plant without notifying his supervisor.

Drawing all reasonable inferences in favor of the plaintiff, no reasonable jury could conclude that plaintiff was discharged because of his paranoid schizophrenia. Because plaintiff has failed to establish a prima facie case, defendant is entitled to judgment as a matter of law on plaintiff's claim under the ADA.

## II. Direct Evidence of Discrimination

Plaintiff contends that certain statements made by employees of defendant constitute direct evidence of discrimination. Unlike the framework that applies in discrimination cases based on circumstantial evidence, when a plaintiff submits direct evidence of discrimination, the employer can only prevail by proving by a preponderance of the evidence that it would have made the same decision even if it had not considered the prohibited criteria. *Haynes v. W.C. Caye & Co., Inc.*, 52 F.3d 928, 931 (11th Cir. 1995).

Plaintiff contends that the alleged statement made by his supervisor that, "I could sue [the company] for hiring a crazy McDonald's Mother Fucker like you," along with the alleged fact that some co-workers referred to plaintiff as "Crazy" or "Crazy Fred" constitutes direct evidence of discrimination. This court, in *Allen v. City of Athens,* 937 F. Supp. 1531 (N.D. Ala. 1996)(S.J. Hancock), explained the concept of "direct evidence" in the context of an employment discrimination case: "Direct evidence of discrimination would be evidence, which, if believed, would prove the

---

that plaintiff cites to in his Brief in Opposition are not comparable to plaintiff's actions and fail to demonstrate that plaintiff was discharged because of his disability.

8

existence of a fact without inference or presumption . . . . However, not every remark made in the workplace constitutes direct evidence of discrimination." Id. at 1538 (citations omitted, emphasis supplied). Finding that "[t]he Eleventh Circuit has adopted Justice O'Connor's definition of direct evidence," the court went on to restate that definition:

> [t]hus, stray remarks in the workplace, while perhaps probative of sexual harassment, cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. *Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process* itself suffice to satisfy the plaintiff's burden in this regard.

*Id.* at 1538 (citations omitted, emphasis supplied). In the recent case of *Merrit v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997), the Eleventh Circuit reiterated that, "evidence that only suggests discrimination, *see Early v. Champion Intern. Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990), or that is subject to more than one interpretation, *see Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 n.2 (11th Cir. 1996), *does not constitute direct evidence.*" 120 F.3d at 1189 (emphasis supplied).

Plaintiff's reliance on an isolated, ambiguous, and stray remark made by a supervisor who allegedly asked plaintiff, while laughing, to "punch him so that [the supervisor] could sue [the company] for hiring a crazy McDonald's Mother Fucker like [plaintiff]" is misplaced. Even assuming such a remark was made, it does not constitute "direct evidence" of disability discrimination under established Eleventh Circuit law. First, the remark is subject to more than one interpretation. Second, it is "unrelated to the decisional process" to discharge plaintiff weeks later for walking off his job and leaving the plant without notifying his supervisor.

9

Similarly, plaintiff's reliance on alleged references to him as "Crazy" or "Crazy Fred," that were made by non-supervisory co-workers, as direct evidence is also misplaced. Statements made by non-decisionmakers cannot, as a matter of law, constitute direct evidence. *See e.g., Trotter v. Board of Trustees of Univ. of Alabama*, 91 F.3d 1449, 1453-54 (11th Cir. 1996) ("For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision."); *Allen v. City of Athens*, 937 F. Supp. at 1543 (holding that remarks and jokes about minorities and the use of the "N" word by a non-decision maker cannot constitute direct evidence).

## III. Retaliation

Plaintiff also contends that defendant violated the ADA by retaliating against him for filing a charge with the EEOC. In *Stewart v. Happy Herman's Chesire Bridge, Inc.*, the Eleventh Circuit set forth the test to establish a prima facie case of retaliation under the ADA:

> To establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action. Once a prima facie case is established, the burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its action that negate the inference of retaliation. The plaintiff must then demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation.

117 F.3d 1278, 1287 (11th Cir. 1997) (citations omitted).

Here, plaintiff cannot show the essential third element of a prima facie case of retaliation, that there is a "causal link" between his filing of the EEOC charge and his suspension or discharge. Plaintiff filed his EEOC charge in November, 1994. (Pl.'s Ex. 1.) He dismissed the charge in early

1996 and was terminated approximately two months later. (Pl.'s Ex. 3 at 96.) Plaintiff's assertion that there is a causal link between plaintiff's filing his EEOC charge and his termination is not supported by the evidence. In support of his retaliation claim, plaintiff merely asserts in his brief that: "In the case before this court, Jones recently at his employer's prompting, voluntarily withdrew his EEOC charge. Jones testified that he withdrew the charge because he wanted to keep his job." (*See* Pl.'s Br. in Opp'n at 15.) This assertion, without more, fails to establish the requisite "causal link" between plaintiff's 1994 EEOC charge and his termination in 1996.

The evidence does show that plaintiff was terminated for leaving defendant's plant without permission after having accumulated enough unexcused absences to result in a three day suspension from work. Therefore, even assuming that plaintiff was able to establish a prima facie case of retaliation, the court finds that defendant has come forward with a legitimate, non-discriminatory reason for its action, that plaintiff had excessive absenteeism and left the job without notifying a supervisor. Plaintiff has made no showing that this proffered reason is a pretextual ruse designed to mask retaliation.

## CONCLUSION

For the reasons stated herein, defendant Doane Products Company's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 24th day of September, 1998.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge